# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VERONICA HUMES,

        **Plaintiff,**

v.

EDWARD T. CUMMINGS, et al.,

        **Defendants.**

Case No. 18-2123-DDC-GEB

## MEMORANDUM AND ORDER

On March 16, 2016, deputy sheriffs from the Leavenworth County Sheriff's Department responded to a report that plaintiff Veronica Humes had fired two gunshots at her neighbor. After plaintiff refused to comply with the deputies' commands to get on the ground, the deputies tased and arrested her. Plaintiff brings this lawsuit under 42 U.S.C. § 1983 against the Leavenworth County Sheriff's Department, Andrew Dedeke (the Leavenworth County Sheriff) in his official capacity, and five deputy sheriffs from the Leavenworth County Sheriff's Department in their individual capacities. Plaintiff alleges that defendants violated her First, Fourth, and Fourteenth Amendment rights. She also asserts a negligence claim under the Kansas Tort Claims Act ("KTCA").

This matter comes before the court on two motions. First, defendants have filed a Motion to Dismiss plaintiff's § 1983 claims under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim. Doc. 14. Second, defendants have filed a Motion to Dismiss plaintiff's KTCA claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Doc. 16. For reasons explained below, the court grants part of defendants' Motion to Dismiss plaintiff's § 1983 claims and denies the remainder. Also, the court grants defendants' Motion to

Dismiss plaintiff's KTCA claim because, as plaintiff concedes, she has not provided written notice of her claim as Kan. Stat. Ann. § 12-105b(d) requires. The court thus dismisses plaintiff's KTCA claim but without prejudice.

## I. Factual Background

The following facts are taken from plaintiff's Complaint (Doc. 1) and viewed in the light most favorable to her. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotation marks omitted)).

Plaintiff owns at least two properties in Leavenworth County, Kansas. One of those properties—located at 215 Broad Street, Easton, Leavenworth County—neighbors the home of Danny Clark. Plaintiff and Mr. Clark have had a "long standing property dispute." Doc. 1 at 5 (Compl. ¶ 28). The two have engaged in many spats, resulting in multiple calls to and visits from local law enforcement officials during the last two years.

On March 16, 2016, plaintiff contacted the Leavenworth County Sheriff's Department ("LCSD") to report that Mr. Clark had been trespassing on her property at 215 Broad Street. LCSD Deputy Jason Slaughter responded to the call. When Deputy Slaughter arrived at plaintiff's property, Mr. Clark emerged from the neighboring house and charged at plaintiff, screaming "You fucking crazy bitch." *Id.* at 5 (Compl. ¶ 30). Deputy Slaughter refused to subdue Mr. Clark. Also, he declined plaintiff's offer to show him footage from her security camera showing Mr. Clark's trespass. Citing the impossibility of determining the actual property line separating the feuding neighbors, Deputy Slaughter refused to file a police report and left the property without resolving the dispute.

A few hours later, plaintiff visited her other property at 31298 Cemetery Road, Easton, Leavenworth County, Kansas. About 9:00 p.m., plaintiff began walking back to the 215 Broad Street property. While walking in the road, plaintiff saw a light in the field to her right. She called out, asking who was there. Suddenly, a large vehicle reversed out of Mr. Clark's property. It drove toward plaintiff with bright, white lights shining at her. Blinded by the light, plaintiff could not identify the vehicle or the person driving it.

A few seconds later, the driver stepped out of the vehicle and ordered plaintiff to get on the ground. Plaintiff later learned that the driver was LCSD Deputy Eric J. Thorne. In response, plaintiff put her hands in the air and asked repeatedly what was going on. Deputy Thorne refused to answer plaintiff's question. Instead, he pulled a gun, pointed it at plaintiff, and threatened to shoot her if she did not comply with his instruction. Plaintiff asserts that she was terrified, confused, and unable to see.

Suddenly, LCSD deputies surrounded plaintiff, as Deputy Thorne continued to order plaintiff to get on the ground. Plaintiff asserts that the deputies became irate, even though she posed no threat and the bright light was blinding her. Then, without any warning, justification, or provocation, defendants fired their tasers at plaintiff. Plaintiff fell to the pavement, and the deputies jumped on her. They pinned plaintiff's head against the ground, pulled her arms behind her back, and handcuffed her. Once detained, deputies transported plaintiff to the LCSD's office and placed her under arrest. Law enforcement officers told plaintiff that they were investigating her for attempted murder of her neighbor, Mr. Clark, who had reported that plaintiff fired two gunshots at him earlier that night.

Plaintiff asserts that defendants conspired or acted in concert to falsify their reports. Plaintiff contends that the reports contain many contradictions and glaring omissions. Plaintiff

also asserts that defendants made these false reports to convince the Leavenworth County prosecutor to bring charges against plaintiff.

On March 17, 2016, the Leavenworth County prosecutor charged plaintiff with aggravated assault and attempted animal cruelty based on Mr. Clark's report to law enforcement. On July 19, 2017, a unanimous jury acquitted plaintiff of these charges.

## II.     Legal Standard

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331–32. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* A court has wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (internal citations omitted); *Los Alamos Study Grp. v. United States Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012).

### B. Motion to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume that the factual allegations in the complaint are true. *Id.* (citing *Twombly*, 550 U.S. at 555). But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

## III. Analysis

The court first addresses defendants' Motion to Dismiss Count 6 (Doc. 16). It then turns to defendants' Motion to Dismiss plaintiff's § 1983 claims (Doc. 14).

### A. Motion to Dismiss Count 6

Defendants ask the court to dismiss Count 6 of plaintiff's Complaint—*i.e.*, her negligence claim asserted under the Kansas Tort Claims Act ("KTCA"), Kan. Stat. Ann. § 75-6103. Defendants assert that the court lacks subject matter jurisdiction over this claim because plaintiff never provided written notice of her claim. Also, defendants argue, the two-year statute of limitations bars plaintiff's negligence claim because she never provided the requisite notice during the limitations period. Defendants thus ask the court to dismiss this claim with prejudice.

Kan. Stat. Ann. § 12-105b(d) requires a plaintiff to given written notice to a Kansas municipality—including a county—before bringing a tort suit against it. *See* Kan. Stat. Ann. § 12-105b(d); *see also Cano v. Denning*, No. 12-2217-KHV, 2013 WL 322112, at *8 (D. Kan. Jan.

28, 2013); *Miller v. Brungardt*, 916 F. Supp. 1096, 1099 (D. Kan. 1996). "This notice requirement is a condition precedent to suit against a municipality." *Cano*, 2013 WL 322112, at *8 (citing *Tucking v. Bd. of Comm'rs*, 796 P.2d 1055, 1057 (Kan. Ct. App. 1990)). And, under Fed. R. Civ. P. 9(c), a plaintiff must allege in her Complaint that she has provided the requisite notice. *See* Fed. R. Civ. P. 9(c) (explaining that a pleading must "allege generally that all conditions precedent have occurred or been performed"). Thus, under Kansas law, a court lacks subject matter jurisdiction over a plaintiff's tort claims when plaintiff fails to plead that she has complied with Kan. Stat. Ann. § 12-105b(d). *See, e.g.*, *United States ex rel. Coffman v. City of Leavenworth*, 303 F. Supp. 3d 1101, 1133 (D. Kan. 2018); *Coffman v. Hutchison Cmty. Coll.*, No. 17-4070-SAC, 2017 WL 4222981, at *4 (D. Kan. Sept. 22, 2017); *Wanjiku v. Johnson Cty.*, 173 F. Supp. 3d 1217, 1236 (D. Kan. 2016).

Plaintiff shoulders the burden to establish jurisdiction. But her Complaint never alleges that she provided the requisite notice under Kan. Stat. Ann. § 12-105b(d). Also, her response to defendants' motion "concedes that she did not allege notice in her Complaint." Doc. 23 at 1. Thus, the court must dismiss plaintiff's Count 6 for lack of subject matter jurisdiction.

But plaintiff asks the court to dismiss this claim without prejudice because "'where the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.'" *Debbrecht v. City of Haysville*, No. 10-1419-JAR, 2012 WL 1080923, at *1 (D. Kan. Mar. 29, 2012) (dismissing plaintiff's state law claims for lack of jurisdiction without prejudice based on plaintiff's failure to comply with Kan. Stat. Ann. § 12-105b(d)'s notice requirements (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006))). Because the court lacks subject matter jurisdiction over plaintiff's KTCA claim, the court dismisses Count 6 without prejudice.

### B. Motion to Dismiss § 1983 claims

Defendants assert three arguments in their Motion to Dismiss. First, defendants argue, the claims against LCSD fail as matter of law because the LCSD lacks the capacity to be sued. Second, defendants contend, the Eleventh Amendment bars plaintiff's official capacity claims against Sheriff Dedeke. Finally, defendants assert that qualified immunity bars plaintiff's § 1983 claims against the individual deputies.

In her response to defendants' motion, plaintiff concedes that the LCSD lacks the capacity to be sued. Also, she concedes that the Eleventh Amendment bars plaintiff's claims against Sheriff Dedeke in his official capacity. The court thus grants defendants' Motion to Dismiss plaintiff's claims asserted against the LCSD and Sheriff Dedeke in his official capacity. The court now turns to address the only remaining argument that it must decide: Does qualified immunity bar plaintiff's § 1983 claims?

A defendant is liable under § 1983 if, under color of state law, the defendant deprives a person of a constitutional right. 42 U.S.C. § 1983. Here, plaintiff asserts five claims against defendants for alleged constitutional violations under § 1983. Count 1 alleges that defendants violated her rights under the Fourth and Fourteenth Amendments against the use of excessive force by law enforcement. Doc. 1 at 11. Next, Count 2 alleges that defendants violated her Fourth Amendment right against unreasonable seizures and her Fourteenth Amendment right to due process. *Id.* at 13. Third, Count 3 alleges that defendants violated her First Amendment right against retaliation for exercising protected speech. *Id.* at 14. Fourth, Count 4 alleges that defendants violated her right under the Fourth and Fourteenth Amendments to be free from malicious prosecution. *Id.* at 15. And last, Count 5 alleges that Sheriff Dedeke and the LCSD developed and maintained policies, procedures, customs, or practices exhibiting deliberate

indifference to the constitutional rights of citizens and that those practice were moving forces behind and proximately caused violations of plaintiff's constitutional rights. *Id.* at 17.

Defendants assert that qualified immunity bars all five claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

To establish a § 1983 claim against an individual defendant asserting the defense of qualified immunity, plaintiff must allege facts that "make out a violation of a constitutional right," and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Addressing the clearly established question first "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question." *Weise v. Casper*, 593 F.3d 1163, 1166–67 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 232).

A right is clearly established if "'there [is] a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts found the law to be as the plaintiff maintains.'" *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). But the "plaintiff cannot simply identify a

clearly established right in the abstract and allege that the defendant has violated it." *Herring v. Keenan*, 218 F.3d 1171, 1176 (10th Cir. 2000) (citation and internal quotation marks omitted)). Instead, the court must determine "'whether the violative nature of *particular* conduct is clearly established.'" *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015)).

Conversely, to hold a defendant liable under § 1983, it is not necessary that "'the very action in question has previously been held unlawful.'" *Id.* at 1866–67 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the Supreme Court does not require a "reported case directly on point" for qualified immunity to apply. *Id.* at 1867 (citation and internal quotation marks omitted). Instead, the court must evaluate whether "the unlawfulness of the officer's conduct '[is] apparent'" "in the light of pre-existing law." *Id.* (quoting *Anderson*, 483 U.S. at 640). This governing standard "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, __ U.S. __, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). In short, the doctrine of qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ziglar*, 137 S. Ct. at 1867 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Although courts typically resolve qualified immunity defenses at the summary judgment stage, "district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Asserting a qualified immunity defense in a Rule 12(b)(6) motion, however, "'subjects the defendant to a more challenging standard of review than would apply on summary judgment.'" *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). This is so because, at the motion to dismiss stage, the court

scrutinizes defendants' conduct as alleged in the complaint for "objective legal reasonableness."

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). But, on summary judgment, the plaintiff no

longer can rest on the pleadings, and the court must decide the qualified immunity questions

based on the summary judgment facts. *Id.*

The court now turns to address whether qualified immunity immunizes defendants from

the five constitutional violations asserted by the Complaint in this case.

### 1. Use of Excessive Force and Unreasonable Seizure Claims (Counts 1 and 2)

The first two claims—Counts 1 and 2—assert that defendants violated her Fourth

Amendment right against unreasonable seizures and the use of excessive force by law

enforcement.[1] Plaintiff's Complaint also premises her § 1983 excessive force claim on the

Fourteenth Amendment. Doc. 1 at 11 (Compl. ¶ 75). As defendants correctly explain in their

motion, excessive force claims arising from force used "leading up to and including an arrest"

are properly analyzed under the Fourth Amendment. *Estate of Booker v. Gomez*, 745 F.3d 405,

419 (10th Cir. 2014) (citation and internal quotation marks omitted).

The Fourteenth Amendment applies to excessive force claims asserted by a "'pretrial

detainee'—one who has had a 'judicial determination of probable cause as a prerequisite to [the]

extended restraint of [his] liberty following arrest.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520,

536 (1979)). Here, plaintiff was not a pretrial detainee when the deputies allegedly used

excessive force to arrest her. Indeed, plaintiff never responds to defendants' argument that the

---

[1]    Plaintiff alleges in Count 2 that defendants violated her Fourth Amendment right against
unreasonable seizures because defendants detained and arrested her without just cause. Doc. 1 at 13
(Compl. ¶ 91). Defendants' Motion to Dismiss doesn't address this Fourth Amendment claim. Also,
defendants' motion doesn't address plaintiff's Fourteenth Amendment Due Process Claim asserted in
Count 2. Thus, this Order just addresses plaintiff's Fourth Amendment claim based on an unreasonable
seizure through the use of excessive force.

Fourteenth Amendment does not apply to her excessive force claim. Instead, she makes her arguments under the Fourth Amendment. *See* Doc. 22 at 6 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Thus, to the extent plaintiff bases her § 1983 excessive force claim on the Fourteenth Amendment, the court dismisses that claim.

The court now turns to defendants' qualified immunity defense against plaintiff's Fourth Amendment excessive force claim. As discussed above, a plaintiff can assert a § 1983 claim against a defendant alleging qualified immunity if she establishes "both (1) that the defendant violated a constitutional right and (2) that the right had been clearly established by the time of the violation." *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015). Here, the Complaint alleges that defendants "violated the Fourth Amendment rights of Plaintiff" with their "actions and use of force" that was "objectively unreasonable in light of the facts and circumstances confronting them." Doc. 1 at 12 (Compl. ¶ 77). Defendants respond, arguing that no reasonable officer would know that his actions—as the Complaint alleges them, *i.e.*, deploying a taser on an attempted murder suspect who is refusing a basic law enforcement command to get on the ground—violated a clearly established constitutional right. The court addresses each prong of the qualified immunity test, in turn, below.

### a. Did defendants violate plaintiff's right against the use of unconstitutionally excessive force?

Under the first prong of the qualified immunity test, plaintiff must plead facts capable of supporting a finding or inference that defendants violated a constitutional right. A claim that law enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's "reasonableness" standard. *Cty. of L.A. v. Mendez*, __ U.S. __, 137 S. Ct. 1539, 1546 (2017). "Determining whether the force used to affect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the

intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The court must pay "careful attention to the facts and circumstances of each particular case, including the [(1)] severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* That an officer made a mistake about the need for force does not decide the question conclusively; instead, the court must analyze the situation as a reasonable officer would have analyzed it in the heat of that moment. *Id.* at 396–97; *see also Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010) ("We must take care to judge the situation 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" (quoting *Graham*, 490 U.S. at 396)). Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Applying the *Graham* factors to the facts here, as viewed in the light most favorable to plaintiff, the court concludes that they are capable of supporting a finding or inference that defendants violated plaintiff's constitutional rights. First, plaintiff concedes that the deputies were responding to a call reporting a severe crime—an attempted murder. Defendants argue that they came to the scene knowing that plaintiff allegedly had fired two gunshots at her neighbor earlier that evening and that they had reason to believe plaintiff still was armed. But, plaintiff argues, the LCSD deputies knew well that plaintiff and Mr. Clark had a long-standing dispute. Plaintiff's Complaint alleges that both parties had called the LCSD for various reasons over the last two years. It also describes how Deputy Slaughter, earlier that same day, had responded to a

call that plaintiff had made. Plaintiff alleges that, when Deputy Slaughter responded to the call, he saw Mr. Clark engage in threatening and aggressive behavior toward plaintiff. She alleges that Mr. Clark stormed out of the neighboring house, charged at her, and screamed, "You fucking crazy bitch." Doc. 1 at 5 (Comp. ¶ 31). Plaintiff asserts that, under the totality of the circumstances, the deputies should have known that Mr. Clark—a person who had engaged in violent behaviors before while in the presence of the LCSD—had called the LCSD simply to retaliate against plaintiff for the report she had made against him earlier that day. Viewing these facts in the light most favorable to plaintiff, the court finds this first factor of the *Graham* test a neutral one.

Second, when viewed in plaintiff's favor, the facts support a finding or inference that plaintiff did not pose an immediate threat to the safety of officers or others. Although officers believed plaintiff was armed with a weapon, plaintiff alleges that she was walking alone in the middle of the road. So, she could not have posed a threat to any bystanders. Plaintiff also alleges that she responded to the officers' commands by raising her hands "deferentially" in the air and asking what was going on. Doc. 1 at 6 (Compl. ¶ 37). Plaintiff asserts that the deputies refused to respond to her question and, instead, threatened to shoot her if she did not comply. Importantly, defendants never identified themselves to plaintiff or explained that they were attempting to arrest her. Instead, the officers approached plaintiff at night, driving vehicles from Mr. Clark's property and with lights shining brightly in plaintiff's eyes. Also, plaintiff never made any verbal or physical threats to the officers. Viewing all these facts in plaintiff's favor, the second *Graham* factor favors plaintiff. The court concludes that the Complaint plausibly alleges a factual basis that can support a finding that defendants used excessive force. *See Cavanaugh*, 625 F.3d at 665 (holding that the second *Graham* factor favored plaintiff because

she never acted aggressively or threatened officers, "[h]er clearly visible hands contained no knife or other weapon," and the officer never warned her before tasing her).

Finally, viewed in plaintiff's favor, the facts fail to show that plaintiff actively resisted arrest or tried to evade arrest by flight. Although plaintiff concedes that she never complied with the command to get on the ground, the deputies never identified themselves as law enforcement officers or explained that they were trying to effectuate her arrest. Also, plaintiff never made any threating or aggressive movements that could support a finding that she was trying to resist arrest or flee. To the contrary, plaintiff alleges that she had stopped walking in the road and raised her hands in the air deferentially to the officers. These facts favor the conclusion that plaintiff has made a plausible claim that defendants used excessive force when they arrested her.

After considering all of the *Graham* factors, the court finds that plaintiff has alleged facts sufficient to assert a plausible claim that defendants violated her Fourth Amendment right against use of unreasonable force during arrest. In reaching this conclusion, the court is mindful that it must not "second guess on-the-ground decisions with the benefit of 20/20 hindsight." *Cavanaugh*, 625 F.3d at 665. The court recognizes that the deputies had received information reporting that plaintiff had fired a gun earlier that evening, and thus they had reason to believe plaintiff still was armed. Although the court must consider the situation as a reasonable officer would analyze it in the heat of the moment, *Graham*, 490 U.S. at 396–97, the court's "inquiry is an objective one and does not focus on his subjective state of mind." *Cavanaugh*, 625 F.3d at 666 ("[T]he proper question is 'whether the officers' actions are "objectively reasonable" . . . without regard to their underlying intent or motivation.'" (quoting *Graham*, 490 U.S. at 397)). But on a motion to dismiss, the court must accept the facts alleged in the Complaint's version of the facts and view those facts in plaintiff's favor, and then determine whether they can support a

finding or inference that defendants' use of force was objectively unreasonable. *See id.* (holding that "regardless of the information [the officer] had previously received[,]" "[i]t is not objectively reasonable to ignore specific facts as they develop (which contradict the need for this amount of force), in favor of prior general information about a suspect."). Here, viewing the facts alleged in their totality and in plaintiff's favor, the court finds that they suffice to allege that defendants used excessive force against plaintiff when they tased and arrested her on March 16, 2016.

### b. Was the constitutional right clearly established?

Defendants next assert that even if they used force unreasonably under the circumstances, defendants still are entitled to qualified immunity under the second prong of the analysis because the law was not sufficiently clear that their conduct was unconstitutional. The court disagrees.

Defendants frame the issue differently than plaintiff does. Defendants assert that "[u]sing a taser on someone who is suspected of attempted murder with a firearm and is refusing to comply" with officers' commands did not violate a clearly established constitutional right. Doc. 24 at 3. But defendants' characterization of the right omits several important facts that plaintiff alleges about her interaction with the deputies.

Here, plaintiff asserts defendants violated her clearly established right to be free from excessive force by using a taser to arrest her when the officers never identified themselves or warned her that they were attempting to arrest her; plaintiff never threatened or acted aggressively toward officers; and plaintiff never attempted to resist arrest or evade arrest by fleeing. Our Circuit has held, in cases with similar facts, that an individual had a clearly established right to be free from excessive force under those circumstances. *See, e.g.*, *White v. Martin*, 425 F. App'x 736, 745 (10th Cir. 2011) (holding that plaintiff's Fourth Amendment right

against excessive force was clearly established when the summary judgment evidence allowed inferences that officers choked plaintiff when not resisting, plaintiff was neither a threat nor attempting to flee, and plaintiff was seeking assistance from another officer); *Cavanaugh v. Woods Cross City*, 625 F.3d 625, 667 (10th Cir. 2010) (holding "it was clearly established on December 8, 2006 that [the defendant officer] could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning"); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007) (holding that "it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance" and concluding that it was clearly established law that "use of a Taser immediately and without warning against a misdemeanant" violated the Fourth Amendment).

Because the Complaint alleges a constitutional violation of clearly established law, the court concludes that plaintiff has stated a plausible § 1983 claim for Fourth Amendment violations based on an unreasonable seizure and the use of excessive force.

### 2. First Amendment Retaliation Claim (Count 3)

Count 3 of the Complaint asserts another § 1983 claim based on defendants' alleged retaliation against plaintiff for exercising her First Amendment rights. Specifically, it alleges that defendants retaliated against plaintiff by using excessive force in response to her questions to the LCSD deputies about who they were and what was happening to her. Doc. 1 at 14 (Compl. ¶ 100). To state a plausible First Amendment retaliation claim, a plaintiff must plead facts capable of supporting a finding or inference: "(1) that she was engaged in a constitutionally protected activity; (2) that a defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's

action was substantially motivated as a response to her exercise of her First Amendment speech rights." *Becker v. Kroll*, 494 F.3d 904, 926 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

For purposes of their Motion to Dismiss, defendants assume that plaintiff sufficiently has pleaded the first two elements. But defendants argue that plaintiff's Complaint fails to allege facts sufficient to demonstrate the third element—*i.e.*, that the deputies' action was substantially motivated as a response to plaintiff's First Amendment exercise. Plaintiff's Complaint asserts that defendants' use of excessive force—*i.e.*, deploying a taser—was substantially motivated as a response to plaintiff's First Amendment right to question the officers about who they were and what was going on. Doc. 1 at 14 (Compl. ¶ 100). But defendants assert that the deputy deployed a taser not in response to plaintiff's questioning but, instead, in response to plaintiff's failure to comply with the officers' commands to get on the ground. Although the Complaint alleges that the deputies ordered plaintiff to get on the ground, it never asserts that the deputies used the taser in response to plaintiff's failure to comply with their commands. For the court to draw that inference, it would have to construe plaintiff's allegations against her. And as the governing legal standard makes clear, the court is not permitted to do that on a motion to dismiss. Instead, the court must view the facts in plaintiff's favor. Here, the Complaint alleges that defendants retaliated against her by using excessive force in response to her exercise of her First Amendment rights. The court thus concludes that plaintiff has pleaded facts sufficient to allege a First Amendment retaliation claim.

Plaintiff has satisfied the first prong of the qualified immunity test. She has alleged facts sufficient to establish that defendants violated a constitutional right. This conclusion leads to the second prong, one requiring plaintiff to show that the constitutional right abridged was a clearly

established one. Plaintiff's Complaint asserts that she "had the clearly established constitutional right to be free from retaliation . . . for the exercise of protected speech." Doc. 1 at 14 (Compl. ¶ 97). But this assertion, "simply identif[ies] a clearly established right in the abstract and allege[s] that the defendant has violated it"—which will not suffice to establish a § 1983 claim that will survive a qualified immunity defense. *Herring v. Keenan*, 218 F.3d 1171, 1176 (10th Cir. 2000) (citation and internal quotation marks omitted)). Instead, the court must determine "'whether the violative nature of *particular* conduct is clearly established.'" *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015)).

More precisely, plaintiff alleges that defendants violated her constitutional rights by using excessive force in response to her exercising her First Amendment right to question the deputies about who they were and what was going on. But plaintiff never cites any case holding that an individual has a First Amendment right to be free from retaliation by law enforcement officers (even unidentified law enforcement) when responding to their commands with questions in lieu of complying with them. Indeed, defendants argue, if the court finds that plaintiff has alleged a clearly established violation here, then "every arrestee who refuse[s] to comply with officers would be rewarded with a First Amendment claim for refusing to comply during their arrest." Doc. 24 at 4.

Plaintiff shoulders the burden to establish both prongs of the qualified immunity test to assert a viable § 1983 claim against a defendant asserting a qualified immunity defense. *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015). Because plaintiff has not cited any case law showing that the alleged constitutional violation here was clearly established, plaintiff has failed to establish that her First Amendment retaliation claim is not barred by qualified immunity.

Defendants thus are entitled to qualified immunity against the claim, and the court thus dismisses Count 3's § 1983 claim based on First Amendment retaliation.

### 3. Malicious Prosecution Claim (Count 4)

Count 4 of the Complaint asserts a § 1983 claim alleging violations of plaintiff's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process. Plaintiff alleges that defendants worked in concert to secure false charges against her—charges that a unanimous jury acquitted her of committing. In response, defendants assert that plaintiff's Complaint fails to include factual allegations supporting the elements of a malicious prosecution claim. For reasons explained below, the court disagrees.

Although a malicious prosecution claim is a common law tort action, it can support a § 1983 claim when a plaintiff alleges an actionable constitutional violation. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) ("The core inquiry under any § 1983 action, regardless of the analogous common law tort, is whether the plaintiff has alleged an actionable constitutional violation."). A plaintiff can assert a malicious prosecution claim based on the Fourth Amendment right to be free from unreasonable seizure as well as the Fourteenth Amendment right to due process. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (noting that the Tenth Circuit "look[s] to both the Fourth and Fourteenth Amendments" when analyzing § 1983 malicious prosecution claims); *see also Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004) ("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.").

The Tenth Circuit uses the common law elements as a starting point for analyzing a § 1983 malicious prosecution claim. *Novitsky*, 491 F.3d at 1257 (citing *Taylor v. Meacham*, 82

F.3d 1556, 1561 (10th Cir. 1996)). But still, "the ultimate question" is whether plaintiff has

alleged "the deprivation of a constitutional right." *Id.* (citing *Taylor*, 82 F.3d at 1561). Starting

with the common law elements, a malicious prosecution claim in Kansas requires a plaintiff to

plead the following elements: "(1) the defendant initiated, continued, or procured the proceeding

of which the complaint is made; (2) the defendant in doing so acted without probable cause; (3)

the defendant acted with malice; (4) the proceedings terminated in favor of plaintiff; and (5)

plaintiff sustained damages. *Good v. Bd. of Cty. Comm'rs*, 331 F. Supp. 2d 1315, 1328 (D. Kan.

2004) (citing *Lindenman v. Umscheid*, 875 P.2d 964, 974 (Kan. 1994)). Here, the Complaint

viewed in plaintiff's favor alleges facts sufficient to support all five elements of a Kansas

malicious prosecution claim.

First, plaintiff alleges that defendants procured her prosecution for attempted murder and

animal cruelty. The Complaint alleges that they did so by conspiring or acting in concert to

falsify their reports to convince the Leavenworth County prosecutor to bring charges against

plaintiff. Plaintiff asserts that defendants' false reports contain many contradictions and

omissions. Also, she alleges, defendants falsely stated that she was "mental" on the night of her

arrest and that the five deputies could not subdue her without using weapons. Doc. 1 at 7

(Compl. ¶ 50). Plaintiff contends that the Leavenworth County prosecutor brought the charges

against her based on false information defendants had provided. These allegations, if true, would

establish the "initiated, continued, or procured" requirement.

Second, plaintiff alleges that defendants acted without probable cause by filing false

reports, conducting an inadequate investigation, and destroying exculpatory evidence. Plaintiff

asserts that defendants confiscated a digital recording system connected to four cameras on the

outside of her property at 215 Broad Street. Plaintiff alleges that this system would have

recorded Mr. Clark's aggressive behavior toward her when LCSD Deputy Jason Slaughter responded to her call on March 16, 2016. Also, presumably, the officers could have reviewed the recording to see if it captured any footage supporting Mr. Clark's report that plaintiff had fired two gunshots at him. Plaintiff alleges that when defendants returned the digital recording system, the digital files were erased. Plaintiff also asserts that defendants took gunshot residue swabs from plaintiff's hands, but they never tested them to determine if she had fired a weapon on the day Mr. Clark accused her of doing so. These allegations satisfy the "without probable cause" element.

Third, plaintiff alleges that defendants acted with malice by conspiring to provide false information to the prosecutor so that the prosecutor would charge and prosecute plaintiff. Doc. 1 at 16 (Compl. ¶¶ 117, 118). Plaintiff alleges that defendants provided the false information "[i]n an attempt to divert from liability for and cover up their unprovoked attacked on a defenseless middle-age woman." *Id.* at 7 (Compl. ¶ 48). This act, if true, would establish malice.

Fourth, plaintiff has alleged that the proceeding terminated in her favor. The Complaint asserts that a unanimous jury acquitted her of the charges procured by the conspiring parties.

And last, plaintiff alleges that she sustained damages. *See, e.g.*, *id.* at 17 (Compl. ¶ 122). This allegation satisfies the fifth element of the Kansas formulation for malicious prosecution.

Defendants argue in response that the Complaint asserts no facts to support the first element of a malicious prosecution claim—*i.e.*, that defendants procured plaintiff's prosecution. Defendants assert that only the prosecutor can institute a probable cause hearing—not defendants. And so, they argue, they never initiated or procured the prosecution against plaintiff for attempted murder and animal cruelty. But, the Tenth Circuit has explained that this element of malicious prosecution doesn't require that the defendant actually be the person who filed the

charges at issue. Instead, the actions of one who "prevaricates and distorts evidence to convince the prosecuting authorities to press charges" also can cause the prosecution. *Pierce*, 359 F.3d at 1293. Here, plaintiff alleges that defendants conspired to falsify evidence. And she alleges that they did so to convince the Leavenworth County prosecutor to bring the criminal charges against her. These allegations suffice to allege that defendants distorted evidence to convince the prosecuting authorities to press charges. In short, defendants' argument on this score is inconsistent with binding precedent. Plaintiff thus has pleaded sufficient facts to support the first element of her malicious prosecution claim.

For plaintiff to assert a § 1983 malicious prosecution claim that will survive defendants' qualified immunity defense, plaintiff must establish that: (1) defendants violated a constitutional right, and (2) the right was clearly established. As explained above, plaintiff had satisfied the first prong of this test. She has alleged facts supporting each element of a malicious prosecution claim under Kansas common law. After using common law elements as a starting point, our Circuit has held that allegations that a defendant "maliciously withheld exculpatory evidence and fabricated inculpatory evidence" sufficiently pleaded violations of both the Fourth and Fourteenth Amendments. *Pierce*, 359 F.3d at 1293–94. Plaintiff's allegations satisfy that standard here.

This moves the analysis to the second issue—whether the right was clearly established. She has alleged facts from which the court can draw a reasonable inference that defendants conspired and engaged in concerted action to falsify and withhold evidence and to maliciously prosecute plaintiff for attempted murder and animal cruelty. Under *Pierce*, plaintiff's right to be free from falsified evidence was clearly established when defendants allegedly committed their conspiratorial acts. *See Pierce*, 359 F.3d at 1299 (holding that an official . . . in 1986 had 'fair

warning' that the deliberate or reckless falsification or omission of evidence was a constitutional violation"); *see also Stewart v. Donges*, 915 F.2d 572, 582–83 (10th Cir. 1990) (holding that defendant was not entitled to qualified immunity because "at the time defendant submitted his affidavit and arrested plaintiff, it was a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause"). These authorities from our Circuit clearly established the Constitutional right that plaintiff alleges defendants took from her. They did so well before 2016, when plaintiff was charged. Plaintiff thus has carried her burden on prong two, meaning, defendants are not entitled to qualified immunity against plaintiff's § 1983 malicious prosecution claim at the motion to dismiss stage.

### 4. Municipal Liability (Count 5)

Finally, Count 5 of the Complaint asserts a § 1983 claim against Sheriff Dedeke and the LCSD based on alleged deliberately indifferent policies, practices, customs, training, and supervision. Doc. 1 at 17 (Count 5). The case law recognizing this theory provides that a municipality is not liable under § 1983 simply because it employs a person who has inflicted a § 1983 injury. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Instead, to assert a § 1983 claim against a municipality based on acts by one or more of its employees, a plaintiff must allege facts capable of supporting an inference that the municipality has a policy or custom that directly caused the deprivation of a constitutional right. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017). A plaintiff may plead such a policy in at least five distinct ways: (1) "a formal regulation or policy statement;" (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or

usage with the force of law;'" (3) "the decisions of employees with final policymaking authority;" (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval;" or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (citations and internal quotation marks omitted).

Plaintiff explains that she bases her municipal liability claim here on the fifth type of policy—a failure to train LSCD officers adequately. Doc. 22 at 16. Specifically, the Complaint alleges that the Sheriff Dedeke and LCSD failed to train its officers adequately about the use of excessive force. Doc. 1 at 10 (Compl. ¶¶ 62–63). It also alleges that Sheriff Dedeke and LCSD failed to investigate the officers' accounts of their interaction with plaintiff properly, thus acquiescing in the malicious prosecution of citizens. *Id.* (Compl. ¶ 66).

The only defendants named in plaintiff's municipal liability claim are Sheriff Dedeke (who plaintiff sues in his official capacity only) and the LCSD. Doc. 1 at 17; *see also id.* at 1 (asserting only an official capacity claim against Sheriff Dedeke). But plaintiff has conceded that her claims against these two defendants are not actionable. Thus, the court has dismissed these defendants from the lawsuit. *See supra* Part III.B. As a consequence, plaintiff's municipal liability claim, as pleaded, is not viable because she asserts it against parties who are not subject to suit. The court thus dismisses this claim. But it also grants plaintiff leave to file an amended complaint that amends the named defendants in Count 5 to include a defendant who is a defendant properly subject to suit on a municipal liability claim. If plaintiff chooses to pursue such a claim, she must file her amended complaint within 10 days of the date of this Order.

**IV.    Conclusion**

For reasons explained, the court grants defendants' Motion to Dismiss plaintiff's § 1983 claims (Doc. 14) in part and denies it in part.  The court dismisses:

- Plaintiff's claims against the LCSD because this entity lacks the capacity to be sued;

- Plaintiff's claims against Sheriff Dedeke in his official capacity because the Eleventh Amendment bars those claims;

- Plaintiff's § 1983 excessive force claim to the extent she bases the claim on a Fourteenth Amendment violation;

- Plaintiff's § 1983 claim for First Amendment retaliation (Count 3) because qualified immunity bars her claim; and

- Plaintiff's municipal liability claim (Count 5) because plaintiff asserts the claim against parties not subject to suit.  But the court grants plaintiff leave to file an amended complaint—one that amends Count 5 (plaintiff's § 1983 claim asserting municipal liability) to assert a claim against the proper defendant.  **Plaintiff must file her Amended Complaint within 10 days of the date of this Order.**

The court denies defendants' Motion to Dismiss in all other respects.

Also, the court grants defendants' Motion to Dismiss Count 6 of plaintiff's Complaint (Doc. 16).  Plaintiff has failed to provide the statutory notice of her KTCA claim as Kan. Stat. Ann. § 12-105b(d) requires.  The court thus lacks subject matter jurisdiction over this claim. And the court dismisses plaintiff's Count 6 without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 14) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Dismiss Count 6 of plaintiff's Complaint (Doc. 16) is granted. The court dismiss plaintiff's KTCA claim without prejudice.

**IT IS FURTHER ORDERED THAT** plaintiff must file an amended complaint that asserts liability against the proper defendant in Count 5 **within 10 days of the date of this Order.**

**IT IS SO ORDERED.**

**Dated this 25th day of September, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**